**UNITED STATES DISTRICT COURT**
**DISTRICT OF COLORADO**

| | |
|---|---|
| Macushla Baumann, individually and on behalf of all others similarly situated, | ) ) ) Case No.: No. 1:22-cv-02453-CNS-GPG |
| Plaintiff, | ) ) |
| vs. | ) ) ) |
| Professional Finance Company, Inc., | ) ) |
| Defendant(s) | ) ) ) |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF HER OPPOSITION TO DEFENDANT PROFESSIONAL FINANCE COMPANY, INC.'S MOTION TO DISMISS**

STEIN SAKS, PLLC

*/s/ Yaakov Saks* _____

Yaakov Saks, Esq.
One University Plaza
Hackensack, NJ 07601
Ph: 201-282-6500
Fax: 201-282-6501
ysaks@steinsakslegal.com

i

## I.     <u>INTRODUCTION</u>

Defendant Professional Finance Company, Inc. ("PFC") moves to dismiss this Complaint, brought by Plaintiff Macushla Baumann ("Baumann") under the Fair Debt Collection Practices Act ("FDCPA" or the "Act"), 15 U.S.C. § 1692 *et seq.*, for failure to state a claim under Fed. R. Civ. P. 12(b)(6).  Plaintiff alleges that the collection letter at issue in this case is deceptive and misleading because although it states interest will continue to accrue on the debt, no such interest is in fact accruing.  Defendant argues that Plaintiff has not plausibly alleged violations of the FDCPA under §§ 1692e, e(2)(A), e(10), f, and g(a)(1) because the collection letter itself shows that past interest has accrued, and urges this Court to adopt the letter as contradictory documentary evidence that supersedes Plaintiff's otherwise conclusory allegations.

However, it is clear based on the miniscule amounts of interest have been charged over a lengthy period of time, literally spanning years, that Valley View Hospital, the creditor in this case, had chosen not to charge interest, presumably while it was working out payment with Plaintiff and relevant insurers.  It was only after each of the medical debts at issue in this case were consolidated into a single debt and sent to Defendant PFC for collection that PFC started imposing interest at the statutory rate.  The collection letter itself says as much.  Therefore, it is clear that Valley View Hospital has waived any interest it could have collected, and Defendant PFC, as Valley View Hospital's agent, is forever barred from collecting that interest by operation of that waiver.

## II.     <u>FACTUAL BACKGROUND</u>

On or about February 4, 2022, Defendant sent a collection letter to Plaintiff (the "Letter") seeking to collect a total debt of $4,296.97 owed to Valley View Hospital, the current creditor on the account.  *See* Dkt. # 1, ¶¶ 20, 26; *see also* Dkt. # 1-1, at 2.  The debt was a series of separate medical debts that Plaintiff had incurred with Valley View Hospital.  *See* Dkt. # 1, ¶ 21; *see also*

1

Dkt. # 1-1, at 4.  The Letter explains that interest is only charged by Defendant after the debt was placed for collections.  *See* Dkt. # 1-1, at 3 ("Because interest is charged on the debt *from the date it was placed for collections*, the amount will increase daily because interest charges will continue to accrue.")(emphasis added).

Moreover, it is clear that from the time the debt was incurred with Valley View Hospital, to the time of placement with PFC, no interest accrued on the debt, whereas interest began to accrue only after the debt was placed with Defendant for collection.  *See* Dkt. # 1-1, at 4 (noting that on June 2, 2016, Plaintiff incurred a debt with Valley View Hospital in the amount of $3,041.00, and that "[b]etween June 2, 2016 and today," February 4, 2022, $0.23 accrued in interest; that on July 8, 2016, Plaintiff incurred a debt with Valley View Hospital in the amount of $6,322.00, and that "[b]etween July 8, 2016 and today," February 4, 2022, $0.43 accrued in interest; that on October 4, 2019, Plaintiff incurred a debt with Valley View Hospital in the amount of $3,470.41, and that "[b]etween October 4, 2019 and today," February 4, 2022, $0.84 accrued in interest; and that on October 28, 2019, Plaintiff incurred a debt with Valley View Hospital in the amount of $710.00, and that "[b]etween October 28, 2019 and today," February 4, 2022, $0.07 accrued interest).

Despite the fact that Valley View Hospital had waived any and all interest, Defendant, who was merely collecting on behalf of Valley View Hospital, *see* Dkt. # 1-1 ("You owe a debt to Valley View Hospital with an account number [redacted]"), nevertheless stated, "Because interest is charged on the debt from the date it was placed for collections, the amount will increase daily because interest charges will continue to accrue[,]" *see* Dkt. # 1, at ¶ 27.  This is false, deceptive and misleading because no interest can or will be charged in the future based on Valley View Hospital's waiver.  *See Id.* at ¶¶ 28, 29, 30.

2

III.   **STANDARD OF REVIEW**

When reviewing a motion to dismiss under Rule 12(b)(6), a court "presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Megna v. Little Switz. of Am. Candy Factory, Inc.*, Civil Action No. 17-cv-00308-RM-KMT, 2018 U.S. Dist. LEXIS 27691, at *3 (D. Colo. Feb. 21, 2018). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Megna*, Civil Action No. 17-cv-00308-RM-KMT, 2018 U.S. Dist. LEXIS 27691, at *3 (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)). A complaint is plausible on its face if it allows "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Civil Action No. 17-cv-00308-RM-KMT, 2018 U.S. Dist. LEXIS 27691, at *3 (quoting *Ashcroft*, 556 U.S. at 678). "[L]abels and conclusions," the "formulaic recitation of the elements of a cause of action, and "naked assertion[s] devoid of further factual enhancement[]" will not suffice. *Id.* at *4 (quoting 556 U.S. at 678)(internal quotations omitted). A court's presumption that the allegations of the complaint are true does not apply to legal conclusions or "conclusory allegations without supporting factual averments." *Megna*, Civil Action No. 17-cv-00308-RM-KMT, 2018 U.S. Dist. LEXIS 27691, at *4 (citing *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998)).

V.   **LEGAL ARGUMENT**

    A. **THE FDCPA AND THE LEAST SOPHISTICATED CONSUMER STANDARD**

Section 1692e prohibits the "use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. Section 1692e(2)(A)

prohibits the "false representation of the character, amount, or legal status of any debt." *Id.* at §
1692e(2)(A).  Section 1692e(10) prohibits the "use of any false representation or deceptive means
to collect or attempt to collect any debt." *Williams v. LVNV Funding, Ltd. Liab. Co.*, Civil Action
No. 14-cv-01356-MEH, 2014 U.S. Dist. LEXIS 112882, at *8 (D. Colo. Aug. 14, 2014)(quoting
15 U.S.C. § 1692e(10)).

The Tenth Circuit imposes a materiality requirement for false or deceptive claims under §
1692e.  *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022).  "The
FDCPA 'does not make actionable every false representation;' instead, to be actionable,
'statement[s] must be material, which is to say capable of influencing the consumer's decision-
making process.'" *Tavernaro*, 43 F.4th at 1067 (citation omitted).  In other words, "materiality
means that a reasonable consumer would be frustrated in his ability to intelligently respond to the
debt collection effort."  43 F.4th at 1067.

The Tenth Circuit is unique among the Circuits in adopting the reasonable person standard
to determine whether a collection letter is materially misleading under § 1692e.  *Tavernaro*, 43
F.4th at 1068.  Nevertheless, the Tenth Circuit has noted that the reasonable person standard is the
functional equivalent of the least sophisticated standard (or the unsophisticated standard, as it is
known in the Seventh Circuit), as adopted by a majority of the Circuit Courts.  43 F.4th at 1068-
71 (finding the least sophisticated consumer standard a "misnomer," and noting that although
courts tend to agree that "the least sophisticated debtor may be uninformed, naïve, and gullible,"
they nevertheless point out that "the least sophisticated consumer 'can be presumed to possess a
rudimentary amount of information about the world and a willingness to read a collection notice
with some care'" and that the  "interpretation of a collection notice cannot be bizarre or
unreasonable.")(internal citations omitted).

"In summary, a representation violates § 1692e only if it is materially false, deceptive, or misleading to the reasonable consumer." *Tavernaro*, 43 F.4th at 1072. "Applying this standard, the first question is whether the representation is misleading." 43 F.4th at 1072. "In viewing representations from the perspective of the reasonable consumer, we assume the reasonable consumer would read a communication in its entirety and make sense of a communication by assessing it as a whole and in its context." *Id.* at 1072. "The inquiry is whether the reasonable consumer could reasonably interpret the representation to have multiple meanings, one of which is untrue." *Id.* "If a reasonable consumer would come to only one interpretation, which is accurate, then the representation is not misleading. On the other hand, if a reasonable consumer could understand a representation as misleading, materiality is then assessed by asking whether the reasonable consumer would have his ability to intelligently respond frustrated." *Id.*

Under § 1692g(a)(1), "An initial communication with a debtor must contain a statement of 'the amount of the debt.'" *Rodriguez v. Cascade Collections LLC*, 532 F. Supp. 3d 1099, 1115 (D. Utah 2021)(quoting 15 U.S.C. § 1692g(a)(1)). "It is not enough that the dunning letter state the amount of the debt that is due. It must state it clearly enough that the recipient is likely to understand it." *Chuway v. Nat'l Action Fin. Servs.*, 362 F.3d 944, 948 (7th Cir. 2004)(citations omitted). "Otherwise the collection agency could write the letter in Hittite and have a secure defense." *Chuway*, 362 F.3d at 948.

### B. THE LETTER VIOLATES THE FDCPA BY ATTEMPTING TO COLLECT INTEREST AND THREATENING FUTURE INTEREST ACCRUALS WHEN VALLEY VIEW HOSPITAL HAD PREVIOUSLY WAIVED ITS RIGHT TO COLLECT INTEREST

Under relevant common law principles in the state of Colorado, "[w]aiver is the intentional relinquishment of a known right." *Johnson v. Indus. Com. of State*, 761 P.2d 1140, 1147 (Colo. 1988); *see also Ather v. Wedg-Cor, Inc.*, Civil Action No. 92 N 2130, 1995 U.S. Dist. LEXIS

22476, at \*76 (D. Colo. Aug. 1, 1995)("Waiver is the knowing, intentional, and voluntary relinquishment of an existing legal right.")(citing *Associates of San Lazaro v. San Lazaro Park Properties*, 864 P.2d 111, 115 (Colo. 1993)(en banc)(internal citations omitted)).  "A waiver may be explicit, as when a party orally or in writing abandons an existing right or privilege, or it may be implied, as when a party engages in conduct which manifests an intent to relinquish the right or privilege or acts inconsistently with its assertion."  *Johnson*, 761 P.2d at 1147.  "A waiver thus requires full knowledge of all the relevant facts."  761 P.2d at 1147.  "The existence of a waiver, like other issues requiring determination of the intent with which a party acted, may be proved by circumstantial evidence."  *Ather*, Civil Action No. 92 N 2130, 1995 U.S. Dist. LEXIS 22476 at \*76-77 (citing *French v. Patriotic Ins. Co. of Am.*, 107 Colo. 275, 111 P.2d 893, 896 (Colo. 1941)).

As relevant here, Colorado law states,

> When there is no agreement as to the rate thereof, creditors shall be allowed to receive interest at the rate of eight percent per annum compounded annually for all moneys after they become due on any bill, bond, promissory note, or other instrument of writing, or money due on mutual settlement of accounts from the date of such settlement and on money due on account from the date when the same became due.

Colo. Rev. Stat. 5-12-102(2); *see also Sherwood v. BRT Corp.*, Civil Action No. 12-cv-02782-RM-KMT, 2014 U.S. Dist. LEXIS 158827, at \*19-20 (D. Colo. July 8, 2014).

Plaintiff's claim is grounded in a line of cases that have recognized similar, if not nearly identical, claims.  In *Gomez v. Cavalry Portfolio Servs., LLC*, No. 14-cv-09420, 2018 U.S. Dist. LEXIS 163575 (N.D. Ill. Sep. 24, 2018), Bank of America had held a charged-off debt on its books over a two-year period without charging interest.  *Gomez*, No. 14-cv-09420, 2018 U.S. Dist. LEXIS 163575 at \*2.  When it was assigned to Cavalry for collection, Cavalry computed the interest over the prior two-year period and attempted to collect it.  No. 14-cv-09420, 2018 U.S. Dist. LEXIS 163575 at \*3.  Drawing on standard waiver principles from the common law, the

court held that Cavalry's attempt to collect this amount violated the FDCPA because Bank of America, in refraining from collecting interest over the prior two-year period, had waived its right to do so.  *See Id.* at *8-10.

Similarly, in *Simkus v. Cavalry Portfolio Servs., LLC*, 12 F. Supp. 3d 1103 (N.D. Ill. 2014), the court denied summary judgment on the plaintiff's claims that the defendant debt collector could not retroactively collect post-charge-off interest accruals that Bank of America had previously waived by choosing not to collect it prior to assignment of the debt.  *Simkus*, 12 F. Supp. 3d at 1109-10.  Relying on the same basic common law principles governing waiver in the state of Arizona, the court found that whether Bank of America had waived its right to collect post-charge-off interest was an issue for the jury.  12 F. Supp. 3d at 1109-10.

Likewise, in *Terech v. First Resolution Mgmt. Corp.*, 854 F. Supp. 2d 537 (N.D. Ill. 2012), the court found that US Bank had waived its ability to collect post-charge-off interest it had previously refused to collect prior to assignment of the debt to the debt collector.  *Terech*, 854 F. Supp. 2d at 539-41.  The court rejected the plaintiff's arguments that US Bank's failure to send periodic statements had any bearing on its intent to waive its right to collect post-charge-off interest (noting that TILA's Regulation Z had recently been clarified such that any inferences that could have been drawn between the failure to send monthly statements and the debt's uncollectability were null and void).  854 F. Supp. 2d at 542-43.  Instead, the court inferred waiver exclusively from the fact that US Bank refrained from charging interest during the year prior to assignment of the debt for collection.  *See Id.* at 543 ("Plaintiff's allegations regarding waiver were already sufficient to survive a motion to dismiss.").

Some courts have rejected waiver claims where the plaintiff was unable to establish prior waiver over a suitable length of time and, as relevant here, where the plaintiff's waiver claim was

based on the prospective application of future interest accruals after debt had been assigned to the debt collector versus the retroactive application of interest that had previously been waived by the creditor. *See e.g. Wilder v. J.C. Christensen & Assocs.*, No. 16-cv-1979, 2016 U.S. Dist. LEXIS 168440, at *17-19 (N.D. Ill. Dec. 6, 2016)(noting two distinguishing features of waiver claims that the plaintiff's claim failed to satisfy, "[f]irst, the length of time that the allegedly waiving original creditor did not add interest or send periodic statements was significantly longer than the ten-day period here," and "[s]econd, in each case, the defendant-creditor tried to impose retroactively the interest that the original creditor had allegedly waived.").

At least one other court has rejected this reasoning, however, and implicitly found waiver to apply to both prospective and retroactive interest.  In *Tabiti v. LVNV Funding, LLC*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 (N.D. Ill. Mar. 27, 2019), the original creditor had waived both retroactive interest accruals for the period leading up to sale of the debt (from October 31, 2008 when the account was charged off to August 25, 2010 when the debt was sold to defendant), and prospective post-charge-off interest accruals after the debt was sold to the debt buyer (from August 25, 2010 to the date of the filing of a collection lawsuit against the plaintiff on November 28, 2012).  *See Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *11-10, *15-16.

While the court examined in depth the underlying purchase agreement between the creditor and the debt buyer, it also noted that even if the defendant had acquired the right to impose post-charge-off interest under the terms of the purchase agreement, Chase had waived the right to impose that interest by refusing to do so prior to the sale of the debt.  *See Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *25-27.  The court arrived at that conclusion in reliance on the same basic common law waiver and assignment principles that had driven the decisions of *Gomez*, *Simkus* and *Terech*.  *See Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *26-27 (noting

that "waiver arises when conduct of the person against whom waiver is asserted is inconsistent with any intention other than to waive it" and that "[a]n assignee takes an assignment of a "debt subject to any existing waivers or defenses.")(citations omitted).

Finally, in *Stratton v. Portfolio Recovery Assocs., LLC*, 770 F.3d 443 (6th Cir. 2014), the Sixth Circuit upheld a claim that was nearly identical to the claim at issue here.  There, the original creditor GE had waived its right to collect its bargained-for right of contractual interest at the rate of 21.99% and examined the question of whether, having forgone this right, the creditor nonetheless retained the right to collect statutory interest of 8% as prescribed under Kentucky's usury law statute.  *Stratton*, 770 F.3d at 445, 447.  The court first noted that Kentucky's usury statute provided a default rule – once having bargained for a contractual rate of interest, that decision was binding on the parties and the statutory rate did not apply.  *See* 770 F.3d at 447.  The court next examined the question of whether GE, once having bargained away its right to impose statutory interest at 8%, somehow resurrected that right by waiving its right to apply the contractual rate of interest it had originally bargained for.  *Stratton*, 770 F.3d at 447-48.  Under the terms of the Kentucky usury law statute and basic common law principles of waiver and assignment, the Sixth Circuit answered in the negative.  *See* 770 F.3d at 447-48.  Specifically, the court reasoned,

> GE concededly waived its right to collect contractual interest, a right it had acquired in part by forgoing its right to collect statutory interest. GE gave up the right to collect 8% statutory interest when it had Stratton agree to a 21.99% contractual rate of interest. GE cannot recover the right it bargained away simply because it later chose to waive the right for which it bargained.

*Id.* at 448.

Based on the caselaw above and basic common law principles of waiver in Colorado, it is clear that the Letter violates §§ 1692e, e(2)(A), e(10), f, and g(a)(1) of the FDCPA by attempting to collect interest, warning of future interest accruals, and deceiving the reasonable consumer on

9

the amount of the debt needed to satisfy Plaintiff's outstanding obligation to Valley View Hospital, based on language in the Letter stating that interest has accrued on the debt in the past and will continue to accrue in the future.  This is deceptive and misleading under the Act because Valley View Hospital had previously waived its ability to collect interest due to its open refusal to do so leading up to its referral of the account to Defendant for collection.  Valley View Hospital's refusal to impose interest is a permanent bar to all future interest accruals which Defendant, acting as Valley View Hospital's agent, is bound by.

Specifically, the Letter makes clear that during the relevant time periods for each of the itemized medical debts – *e.g.* June 2, 2016 to February 4, 2022 for the debt of $3,041.00, July 8, 2016 to February 4, 2022 for the debt of $6,322.00, October 4, 2019 to February 4, 2022 for the debt of $3,470.41, and October 28, 2019 to February 4, 2022 for the debt of $710.00 – a period of years spanning from as long as five-and-a-half years to two years, no interest accrued on the debt at all.  *See* Dkt. # 1-1, at 4.  As stated in the Letter, interest only began to accrue when the debts were consolidated and referred to PFC for collection.  In other words, Valley View Hospital waived its right to impose interest and PFC, ignoring that waiver, began to assess it.

These time periods accord with the time periods required to establish waiver in the above-cited caselaw.  *See Wilder v. J.C. Christensen & Assocs.*, No. 16-cv-1979, 2016 U.S. Dist. LEXIS 168440 at *17-18 (collecting cases); *see also Gomez*, No. 14-cv-09420, 2018 U.S. Dist. LEXIS 163575 at *8-10 (failed to charge interest over a two-year period); *see also Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *11-10, *15-16 (calculating interest over a four-year period, including both retroactive interest prior to the sale of the debt and prospective interest thereafter). Valley View Hospital's refusal to impose interest for the four separate medical debts at issue over five-and-a-half, five-and-a-half, two-year and two-year periods, respectively, easily pass that bar.

To the extent that Defendant would argue that Plaintiff has not alleged enough facts to establish waiver, *Terech* rejected that argument.  Ruling on a motion to dismiss, the same procedural posture here, that court found that the plaintiff had established waiver exclusively from the original creditor's failure to impose interest over the periods at issue.  *See Terech*, 854 F. Supp. 2d at 543 ("However, as the Court noted above, Plaintiff's allegations regarding waiver *were already sufficient* to survive a motion to dismiss.")(emphasis added).  The court rejected the plaintiff's attempt to bring in additional allegations purportedly showing the creditor's intent to waive its right to post-charge-off interest, namely, the creditor's failure to send monthly billing statements (rejected, as noted above, primarily because of a change in the relevant banking regulations which nullified any inferences to be drawn from the debt's uncollectability, the presumed reason for not sending the statements).  *See* 854 F. Supp. 2d at 543.  Even with that deficiency in the allegations, the court still found the creditor's failure to impose interest sufficient on its own to establish waiver.  *See Id.* at 543.

To the extent that Defendant would argue that Plaintiff is improperly seeking to extend the above-cited caselaw to prospective interest accruals after the debt was assigned to PFC as to opposed to retroactive interest accruals prior to assignment, *Tabiti* implicitly rejected this proposition when it found waiver not only in the context of past accruals prior to the sale of the debt, but prospective accruals after the debt had been sold.  *See Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *11-10, *15-16.

Moreover, such an argument is a blatant repudiation of the concept of waiver itself, which, at bottom, presupposes that a party's actions in refraining from asserting a legal right forever bars the ability to assert that *in the future*.  This is a concept that goes back well over 100 years.  *See Stearns v. Sopris*, 4 Colo. App. 191, 198, 35 P. 281 (1894)("A party may expressly agree not to

take advantage of what he may have the legal right to assert, or he may do those things by which he will be estopped to insist on the condition, and in either event be legitimately adjudged to have waived it.").  To deny that now, without any principled justification in the context of post-charge-off interest, would be to deny the basic concept of waiver under the common law.

In this vein, the issues are clear.  Valley View Hospital had a right to impose statutory interest at the rate of 8% in the absence of an agreement under Colo. Rev. Stat. 5-12-102(2).  It chose not to do so over the course of a several-year period and thereby waived it.  *See Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *25-27.  Defendant, acting as Valley View Hospital's agent in collecting the debt, is only entitled to assert the rights that Valley View Hospital has.  *See Lorenzo v. Durham & Durham, LLP*, No. 2:20-cv-109-SPC-MRM, 2020 U.S. Dist. LEXIS 60989, at *6 (M.D. Fla. Apr. 6, 2020)(even the least sophisticated consumer "understands the debt collector is the creditor's agent and the creditor have the same right as the debt collector"); *see also Caceres v. McCalla Raymer, Ltd. Liab. Co.*, 755 F.3d 1299, 1304 (11th Cir. 2014)(a "debt collector is obviously the agent of the creditor" when attempting to collect a debt).  Defendant is therefore barred from imposing statutory interest at the rate of 8% under Colo. Rev. Stat. 5-12-102(2) by virtue of Valley View Hospital's waiver, regardless of whether interest is retroactively or prospectively applied.  *See Tabiti*, No. 13-CV-7198, 2019 U.S. Dist. LEXIS 51421 at *25-27.

Notwithstanding the differences in Colo. Rev. Stat. 5-12-102(2) and the Kentucky usury law at issue in *Stratton*, *compare* Colo. Rev. Stat. 5-12-102(2) *with Bunce v. Portfolio Recovery Assocs., LLC*, No. 14-2149-JTM, 2014 U.S. Dist. LEXIS 159679, at *10 (D. Kan. Nov. 12, 2014)(rejecting the plaintiff's waiver claims, in part, because similarly worded "Kansas and Missouri statutes lack the mandatory 'shall be bound' language which was a key element of the Sixth Circuit's decision in *Stratton*."), *Stratton* remains persuasive.  Once having forgone its right

to impose Kentucky's statutory interest rate of 8% by virtue of bargaining for a contractual rate instead, the creditor could not reverse course and claim that it was entitled to the statutory rate when it had already been waived.  *See Stratton*, 770 F.3d at 448.  Although the Sixth Circuit drew from the language of Kentucky's usury statute in arriving at that conclusion, *see* 770 F.3d at 448, the Circuit Court also drew from basic waiver principles which apply with equal force here.  Thus, notwithstanding the lack of any similar "shall be bound" language in Colorado's statute, Valley View Hospital's decision to forgo applying the statutory interest rate of 8% under Colorado law is plainly a waiver under the circumstances of this case, and its waiver mimics the waiver in *Stratton*, where the creditor waived its right to apply the 8% statutory interest rate when it bargained for another contractual rate.  *See Id.* at 448.

This also distinguishes this case from cases like *Bunce*.  In rejecting similar waiver claims, *Bunce* distinguished both *Terech* and *Simkus* where the plaintiffs were able to establish that the creditors had failed to charge any interest at all over a period of years.  *See Bunce*, No. 14-2149-JTM, 2014 U.S. Dist. LEXIS 159679 at *5-6 (the court noting, "In *Simkus*, the original lender delayed two years after charging off the account, during which time it separately reported to credit bureau that the account value was unchanged, before selling account to defendant, again for the charged off amount," and ultimately concluding, "Both cases contain allegations that the original lenders took voluntary actions demonstrating an intention to waive interest charges.").  By contrast in *Bunce*, "simply because the original creditors charged off the accounts and stopped sending month statements" did not necessarily mean that the creditor had waived the right to charge interest in the future without additional evidence showing that it had refrained from doing so in the past. *See Bunce*, No. 14-2149-JTM, 2014 U.S. Dist. LEXIS 159679 at *6.  Here, Plaintiff has established the key evidence of waiver that was missing in *Bunce* but was present in both *Terech* and *Simkus*,

evidence that, over a period of several years involving four separate debts, Valley View Hospital failed to impose any interest rate at all, certainly not the statutory rate of 8% it was entitled to under Colorado law. *See* Dkt. # 1-1, at 4.

It is also for this reason that *Bunce*'s rejection of the plaintiff's waiver claim is not persuasive here. The court rejected the plaintiff's attempt to reverse engineer a waiver of statutory interest out of a waiver of contractual interest, and cited various other decisions that have rejected the same position. *See Bunce*, No. 14-2149-JTM, 2014 U.S. Dist. LEXIS 159679 at *6-7 (citing *Grochowski v. Daniel N. Gordon, P.C.*, No. C13-343 TSZ, 2014 U.S. Dist. LEXIS 54258, 2014 WL 1516586, at *3 n.2 (W.D. Wash. Apr. 17, 2014)("[c]ontrary to plaintiff's assertion, Capital One's decision to forego the contractual rate of interest did not relinquish its right to seek prejudgment interest at the statutory rate")).

However, the court's rejection of this inference was driven primarily, if not exclusively, by the fact that the plaintiff in that case had failed to establish waiver of any kind. *See Bunce*, No. 14-2149-JTM, 2014 U.S. Dist. LEXIS 159679 at *7 ("The plaintiffs have failed to show actions evidencing a clear and unequivocal intent to waive the right to statutory interest."). Here again, Plaintiff has sufficiently established waiver by the fact that Valley View Hospital plainly failed to impose interest for a period of between two and five and a half years. *See* Dkt. # 1-1, at 4.

### B. PLAINTIFF REQUESTS LEAVE TO AMEND

"Rule 15(a) provides that leave to amend a complaint 'shall be freely given when justice so requires.'" *Anderson v. Suiters*, 499 F.3d 1228, 1238 (10th Cir. 2007). "Refusing leave to amend is generally justified only upon a showing of "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party, … [or] futility of amendment." *Ahlgrim v. Manzanares*,

14

No. CIV 12-1017 WPJ/CEG, 2014 U.S. Dist. LEXIS 203872, at *8 (D.N.M. June 6, 2014)(citation omitted). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal." *Lind v. Aetna Health, Inc.*, 466 F.3d 1195, 1199 (10th Cir. 2006).

Plaintiff's claims are grounded in fact and law and clearly have merit, based on the foregoing discussion. Therefore, to the extent that this Court deems Plaintiff's current allegations in the Complaint insufficient to support her waiver claims, Plaintiff respectfully requests leave to amend to provide allegations consistent with the arguments made in Plaintiff's opposition. Defendant moves for dismissal with prejudice and avers that the parties engaged in limited informal discovery and related discussions that should have informed Plaintiff of the need to amend. However, those conversations only bore fruit literally the day Defendant filed its motion to dismiss. Defendant's last communication with Plaintiff, sent the same day, clarified the viability of Plaintiff's waiver claims. Therefore, Plaintiff should be granted leave to amend. Defendant would not be prejudiced by this as discovery is still open.

## VI.    <u>CONCLUSION</u>

For the reasons set forth above, Defendant's motion to dismiss should be denied in its entirety.

Dated:  February 23, 2023                               Respectfully Submitted,

                                                        **STEIN SAKS, PLLC**


                                                        */s/ Yaakov Saks*_____

                                                        Yaakov Saks, Esq.

15

## CERTIFICATE OF SERVICE

I hereby certify that on February 23, 2023, I electronically filed the foregoing with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

*/s/ Yaakov Saks*

Yaakov Saks, Esq.